STATE EX REL. HOWARD LAW v.
DISTRICT COURT OF RAMSEY COUNTY.

150 N. W. (2d) 18.

April 7, 1967—No. 40,711.

*Paul H. Ray,* for relator.

*William B. Randall,* County Attorney, and *Thomas M. Quale,* Assistant County Attorney, for respondent.

PETERSON, JUSTICE.

Relator was arrested by St. Paul police at the request of the Hennepin County sheriff pursuant to Minn. St. 629.32. The police had been advised by the sheriff that there was a warrant for relator's arrest on a complaint of aggravated assault committed in Minneapolis. Relator was arrested but temporarily escaped, and, upon his recapture, faces trial in Ramsey County District Court on a charge of escape. § 609.485.

Relator challenges the jurisdiction of the Ramsey County District Court to try him on a charge of escape on the ground that his initial arrest was invalid, the warrant being defective because issued by a deputy clerk of court and not a magistrate. State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382. We issued a writ of prohibition to consider the claim because a decision agreeable to relator's claim would go to the jurisdiction of the court or would otherwise be decisive in the case. Thermorama, Inc. v. Shiller, 271 Minn. 79, 135 N. W. (2d) 43.

We are precluded from making a final determination of the issue presented because of the limited record before us. This record contains only the testimony of the arresting police officers and the warrant under which they acted. It does not contain essential evidence relating to the issuance of the warrant itself. Although we indulge in certain *assumptions* of facts for the purposes of this opinion only, the actual facts must be determined by the trial court upon remand. Writs of prohibition are wholly discretionary with this court and normally will issue only where all the essential facts are undisputed.

A warrant for the arrest of relator was issued on October 10, 1966, by the Hennepin County Municipal Court, First Division, Minneapolis, *apparently* on the sworn complaint of one Edgar Keith Murphy, alleging that relator committed an aggravated assault upon him. Aggravated assault is a felony. § 609.225, subd. 2. The text of the warrant is as follows:

"To the Chief of Police, or any Police Officer of the City of Minneapolis, or the Sheriff or any Constable of said County.

"Whereas, Edgar Keith Murphy has this day made complaint to the above named Court, on oath, in writing, that on or about the 9th day of October, A. D. 1966, at the City of Minneapolis, Hennepin County, Minnesota, HOWARD CHARLES LAW then and there being armed with a dangerous and deadly weapon, to-wit: a whisky bottle commonly so-called, a more particular description of said weapon being to the complainant unknown, did then and there unlawfully, wrongfully, knowingly and feloniously with said weapon, with force and arms in and upon

one Edgar Keith Murphy, a human being, make an assault with intent to inflict bodily harm but without intent to inflict great bodily harm, by then and there with said weapon, cut, beat, bruise and wound the said Edgar Keith Murphy, contrary to the statute in such case made and provided and against the peace and dignity of the State of Minnesota, and prayed that said offender might be arrested and dealt with according to law.

"Now, THEREFORE, in the name of the State of Minnesota, you, the said Chief of Police, or any Police Officer of said City, or the Sheriff or any Constable of said County, are hereby commanded forthwith to apprehend and arrest the said HOWARD CHARLES LAW and bring him before the Court, to be dealt with according to law.

"Witness the Honorable ELMER R. ANDERSON, Judge of the said Court at the City of Minneapolis, aforesaid, this 10th day of October, A. D. 1966.

"Laws of 1963, Chapter 753, Article I, Section 609.225, Subd. 2

"Charge Aggravated Assault

"Issued by J. M. Winick by W. R. Kennedy
　　　　　　Assistant County Attorney.
　　　　　　　　　"ARTHUR H. ANDERSON
　　　　　　　　　　　Clerk of the Municipal Court.
　　　　　　　　　"By /s/ J B Muller $5,000 Deputy."

Although the warrant refers to the sworn complaint of Murphy, the complaint is not a part of the record so its existence and contents can only be *assumed* for purposes of this opinion. Similarly, although the warrant on its face is attested in the name of a municipal judge, we indulge the tentative assumption that it was not in fact issued by such magistrate.[1]

On October 15, 1966, officers of the Hennepin County sheriff advised officers of the St. Paul Police Department that Hennepin County

---

[1] Relator does not assert that such a complaint was nonexistent. He does assert that the warrant was issued by a deputy clerk; his attorney states that he talked to the municipal court and also to the Hennepin County Attorney's office and "they stated that this warrant and all warrants they have been issuing for the last year or so, were by the deputy clerk signing it."

had a warrant for relator's arrest on a charge of aggravated assault and requested that the St. Paul police take him into custody, relator being a resident of St. Paul.

On the same day, at about 5:30 in the afternoon, four uniformed St. Paul police officers went to the home of relator for the purpose of effecting the arrest, having been notified by police radio to do so. *They did not have a copy of the warrant in their possession at the time and presumably were unaware of the details of the complaint or the manner in which the warrant was executed.* Two of the officers knocked on the front door of the building in which relator resided, and a woman downstairs opened the door for them. When asked if Howard Charles Law lived there, the woman indicated that he lived "upstairs to the left." The two officers then went upstairs and knocked on the door of relator's apartment. A woman answered the knock and when the police officers identified themselves told them, "Wait a few minutes." A woman who indicated that she was relator's wife thereafter opened the door and stated that relator "wasn't home." The officers informed her that "there was a Hennepin County warrant for her husband for aggravated assault." One of the officers entered the apartment with the consent of relator's wife. The other officer remained out in the hall and from that point could see through an open door into a bedroom opening onto the front porch. He "saw a head pop up from the porch" and said to the person there, "Howard, you might as well come in," whereupon relator came into the room. When the officer stated to relator that there was a Hennepin County warrant for him for an assault, relator said, "Where is the other party?" The officers replied, "We don't know anything about what happened, that is all we know; there is a warrant, we were sent here to pick [you] up for Hennepin County." The relator, according to the officer, "started to get mad and everything else * * * because the other party wasn't there." The officer said to him, "Do we have to handcuff you to bring you out?" Relator thereupon subsided and went peaceably downstairs with the officers.

When the officers and relator came out on the sidewalk and were

about to enter the police car, relator ran away.[2] Upon recapture, relator was taken to St. Paul police headquarters and booked on the charge of escape. Later that evening the Hennepin County warrant was actually delivered to the St. Paul Police Department.

Relator's claim is simple and concise: (a) One cannot commit the crime of escape unless he is first in *lawful* custody, § 609.485;[3] and (b) he was not in lawful custody because the warrant pursuant to which he was arrested was invalid, having been issued by a clerk and not a magistrate. § 629.42.[4] The fact that a warrant thus issued is defective does not necessarily render custody unlawful under all circumstances, however. The controlling question, instead, is whether the arrest under these circumstances was made upon probable cause.

Two important statutes governing arrests must be construed and applied in this context. Section 629.32, which established the procedures under which this arrest was made, provides:

"* * * An arrest may lawfully be made by a peace officer when advised by any other peace officer in the state that a warrant has been issued for that person."

---

[2] After a chase of a short distance one of the police officers called to relator to stop or he would shoot. The relator said, "Go ahead and shoot," whereupon the officer fired three warning shots over his head and continued in pursuit. The officers lost sight of relator and ultimately discovered him about two blocks distant, under a warming house at a playground on Concordia Avenue and Kent Street, St. Paul. He was crouched down and had his left hand behind his back. When he was asked to come out, relator said, "You better shoot me you [lewd epithet], because I have a gun and I am going to shoot you." Relator picked up a "log about two feet long and six inches in the diameter" and threw it at the police officer. He came out when the officers said they were going to get a gas bomb to get him out.

[3] The statute refers to custody "on a charge or conviction of a crime." This language was taken from the American Law Institute draft and has been interpreted to include "everything from arrest, to confinement in a jail pending trial, to confinement in an institution following conviction." Advisory Committee Comment, 40 M. S. A. p. 430.

[4] Although relator makes passing reference to the due process requirements of Minn. Const. art. 1, § 7, his argument is essentially statutory,

Section 629.34(3), which would be applicable if the warrant was a nullity, provides:

"A peace officer may, without warrant, arrest a person:

\* \* \* \* \*

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

The power of arrest conferred upon the St. Paul police by § 629.32 should be given a practical construction compatible with the requirements of effective criminal apprehension in the public interest, so long as it is consistent with the constitutional demand for protection of the individual accused of crime.[5] Criminal apprehension operates today under the practical handicaps of time and the mobility of those engaged in crime. The statute is undoubtedly designed to effectuate the prompt cooperation of police officers into whose area criminals may flee from the scene of the crime.[6] The state and its municipalities, moreover, need to use their limited manpower with maximum efficiency without unnecessary travel to places outside their normal jurisdiction. The mere fact that the arresting officers did not have the warrant in actual possession at the time of the arrest, therefore, is not itself an impediment to lawful arrest.

---

based upon a construction of the statute governing practice and procedure in criminal proceedings in Hennepin County municipal court. Minn. St. 488A.10. He argues that subd. 7 thereof, which authorizes the issuance of warrants by court clerks, is not applicable in this felony case because the language of subd. 1 makes it inapplicable to actions or proceedings "applying peculiarly to felony or gross misdemeanor charges." Therefore, he argues, § 629.42 is the only applicable statute for the issuance of a warrant in this case. Whatever the construction of the municipal court statute, it is now certain that a warrant must be issued after a hearing by a magistrate. State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382.

[5] See, §§ 645.16, 645.17.

[6] This court recognized in State ex rel. Ogg v. Tahash, 273 Minn. 187, 194, 140 N. W. (2d) 692, 696, that "[i]n this age when many crimes are possible with the aid of automobiles" criminal apprehension procedures must be given a reasonable construction lest we "make a farce of the police protection to which all citizens are entitled."

The statutory power to make an arrest without a warrant, § 629.34(3), may validate an arrest made pursuant to § 629.32 where the warrant is itself defective. That statute should be given a practical construction to implement § 629.32, subject only to the constitutional demands of probable cause. We have noted the *apparent* fact the warrant in this case was based upon the sworn complaint of the victim of relator's alleged aggravated assault and the *apparent* identification of relator by the complainant as the assailant. It is beyond doubt that a police officer would have authority, pursuant to § 629.34(3), to make an arrest without a warrant had the complainant stated the facts directly to the police officer. It is our opinion that such police officer could lawfully invest another police officer with the same authority pursuant to § 629.32. The warrant, defective or not, is but the vehicle for setting the procedure in motion.

We recognize, of course, that the probable cause of the arresting officer is based only on hearsay. In this case, the sworn statement was *apparently* made to the deputy clerk of Hennepin County municipal court who, by warrant, conveyed the facts to the Hennepin County sheriff; the Hennepin County sheriff, in turn, relayed to the St. Paul police the request for relator's arrest, stating only that there was a warrant charging him with aggravated assault upon the named complainant.[7] It is well settled, however, that law-enforcement officers can lawfully proceed to make an arrest upon the hearsay of a "usually reliable informer," United States v. Ventresca, 380 U. S. 102, 108, 85 S. Ct. 741, 745, 13 L. ed. (2d) 684, 688, cited parenthetically and with approval in Duhn;[8] see, also, McCray v. Illinois, 386 U. S. 300,

---

[7] In the instant case the sworn statement was in the form of a complaint. An affidavit, of course, would serve the same purpose in setting forth facts constituting probable cause.

[8] Ventresca involved not only an arrest, but a search and seizure, which, as the dissenting Mr. Justice Douglas observed in an earlier case, is a more serious thing. Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. ed. (2d) 327. In the instant case only an arrest is involved. See, also, State v. Harris, 265 Minn. 260, 121 N. W. (2d) 327, certiorari denied, 375 U. S. 867, 84 S. Ct. 141, 11 L. ed. (2d) 94; State v. Emerson, 266 Minn. 217, 123 N. W. (2d) 382.

87 S. Ct. 1056, 18 L. ed. (2d) 62. We think that the conduit of these regular government officials meets the test of reliability. We are persuaded by the teaching of Draper v. United States, 358 U. S. 307, 313, 79 S. Ct. 329, 333, 3 L. ed. (2d) 327, 332, that the constitutional tests of "probable cause" are not technical tests but "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Or, in the rationale of Ventresca, "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." 380 U. S. 108, 85 S. Ct. 746, 13 L. ed. (2d) 689.[9]

The crucial fact issues in this case, to be determined by the trial court, are whether the deputy clerk of Hennepin County municipal court actually had before him a sworn complaint from Edgar Keith Murphy stating the facts of the alleged aggravated assault and the identity of relator as his assailant with the same particularity as appears in the warrant itself, and whether the officer relied on facts recited in the complaint by the victim or whether he had other independent information which established probable cause. The state, at the trial of relator upon the charge of escape, must show that he was in lawful custody. As part of its proof, the state must establish as a fact that there was probable cause for his arrest. If the trial court finds that the information in possession of the initiating officer was sufficient to establish probable cause under the rules enunciated in Giordenello, Aguilar, Barnes,[10] and Duhn, then the arresting officer, acting on his

---

[9] Quite obviously §§ 629.32 and 629.34 could not be read together to validate an arrest without a valid warrant in a misdemeanor case. City of St. Paul v. Webb, 256 Minn. 210, 97 N. W. (2d) 638, 76 A. L. R. (2d) 1423. Neither would it validate an arrest based upon the defective warrant in the Duhn case, the warrant having there issued upon the complaint of one not having testimonial knowledge of the facts recited. Not only was the complaint in Duhn not executed before a magistrate but it did not establish probable cause because there was no showing as to the source of information upon which the complaining officer relied. Hence, the question of whether the complaint was sufficient as an affidavit to establish probable cause was not raised.

[10] Giordenello v. United States, 357 U. S. 480, 78 S. Ct. 1245, 2 L.

behalf, had a right to arrest relator notwithstanding the invalidity of the warrant under which he purported to act.

Writ discharged.

ed. (2d) 1503; Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723; Barnes v. Texas, 380 U. S. 253, 85 S. Ct. 942, 13 L. ed. (2d) 818.