STATE of Minnesota, Respondent,

v.

Paul Michael HOVEN, Appellant.

No. 47158.

Supreme Court of Minnesota.

July 21, 1978.

C. Paul Jones, Public Defender, Gregory Gaut, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Craig Forsman, Asst. Atty. Gen., St. Paul, Roger Van Heel, County Atty., St. Cloud, for respondent.

Heard before SHERAN, C. J., and PETERSON and TODD, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

Defendant appeals from a conviction in a court trial[1] for possession of controlled substances in violation of Minn.St. 152.01, 152.02, 152.09, and 152.15. The conviction was based on evidence discovered in a search of defendant's vehicle which had been im-

---

1. Defendant waived his right to a jury trial.

pounded after it was stopped and he was arrested on two outstanding traffic arrest warrants. Because we believe that these arrest warrants were used pretextually to permit the police to search defendant's vehicle in which they expected to find illegal drugs, the evidence seized as a result of this illegal search must be suppressed and the conviction reversed.

On October 24, 1974, the St. Cloud police received information from an informant who was considered reliable that the defendant was in St. Cloud, that he was driving a pickup truck with Iowa license plates, and that he was preparing to leave for Iowa with drugs in his possession. The police made no effort to obtain a search warrant based on this information. Instead, they intended to arrest him on warrants stemming from the defendant's failure to appear in response to minor traffic violations.

After receiving this information a police officer who knew the defendant personally began to patrol the area of St. Cloud which the defendant was known to frequent. At about 1:45 p. m., he observed a Ford pickup truck with Iowa license plates parked on a public street. He immediately placed the vehicle under surveillance and ran a license check on it. An Iowa license plate check uncovered that the vehicle was registered to a salvage company. Since the officer knew that defendant was associated with a salvage company, he placed the vehicle under surveillance. At no time, however, did he attempt to get a search warrant to permit him to search the truck he believed to belong to defendant.

Approximately two hours later defendant emerged from a nearby residence, got into the truck, and drove away. The officer began to follow the truck and he observed that the driver was defendant. After following the truck for a short distance during which time no traffic violations occurred, he signaled it to a stop.

Defendant left the truck and walked toward the police vehicle. The officer informed him that he was under arrest for the two traffic offenses, handcuffed him, and gave him a *Miranda* warning. A search of his clothing revealed a hypodermic syringe in his shirt pocket. The arresting officer then requested and was given consent by defendant to look in the truck. He examined the cab and the open box area of the pickup. When the officer began to open a suitcase he had found, the defendant withdrew his consent, and the officer ceased his search. At this time, a tow truck arrived to haul the truck to the local impoundment facility, and the defendant was taken to police headquarters and placed in a jail cell.

Two St. Cloud police officers were at the impoundment lot when the truck arrived. One of them testified that, while standing on the left side of the truck, he observed an open brown paper bag in plain sight in which he could see a plastic bag that appeared to contain a grassy substance. The officers seized the bag and found it to contain marijuana. After displaying the contents to the defendant at the jail, he was rearrested for illegal possession of marijuana and given another *Miranda* warning.

The next morning the same officer advised defendant that he intended to obtain a search warrant for the truck. Defendant told the officer that a search warrant would be unnecessary, signed a consent-to-search form, and disclosed the location in the vehicle of additional marijuana and several small packets of heroin. Defendant testified at the *Rasmussen* hearing that he did this because he felt the police would find the controlled substance in the truck once they had obtained a search warrant, and he did not know what else to do.

The evidence obtained from this "consent" search and the marijuana alleged to have been in plain sight were received in evidence over defendant's objection. The trial court found defendant guilty on two charges, but execution of the concurrent sentences was stayed, and he was placed on probation.

■ 1. The state concedes that the traffic warrants upon which Hoven's initial arrest was predicated were fatally deficient in their lack of a statement of probable cause.

The arrest was therefore illegal. Even if the arrest warrants had been technically perfect, however, the pretextual nature of the arrest made the subsequent search of defendant's vehicle constitutionally impermissible.

▮ Pretext arrests by the police cannot be used to justify and legitimate otherwise illegal searches and seizures. In the leading case of *Amador-Gonzalez v. United States*, 391 F.2d 308 (5 Cir. 1968), the defendant was arrested for a minor traffic offense because he was suspected of concealing narcotics on his person or in his automobile. Although the arrest itself was legitimate, the heroin seized from a cavity in the front seat of the automobile was ordered suppressed on the ground that the arrest was a mere pretext to allow the officer to conduct an unreasonable search. The court reasoned as follows (391 F.2d 313):

> "The lawfulness of an arrest does not always legitimate a search. General or exploratory searches are condemned even when they are incident to a lawful arrest. The arrest must not be a mere pretext for an otherwise illegitimate search. The search must have some relation to the nature and purpose of the arrest.

> "Gonzalez was arrested for a minor traffic offense. It is not clear at just what time the traffic arrest turned into a narcotics arrest, but it could not have been until *after* the search. Until that time there was no probable cause to believe that the vehicle was transporting narcotics and no probable cause to make an arrest for the possession of drugs." (Italics supplied.)

▮ The reasoning of *Amador-Gonzalez* was explicitly accepted by this court in

*State v. Curtis*, 290 Minn. 429, 434, 190 N.W.2d 631, 634 (1971). There we overturned defendant's conviction for possession of marijuana which was discovered following his arrest for a minor traffic violation. Justice Otis noted that "[c]ourts uniformly have forbidden the use of a minor traffic offense as a pretext for searches directed at unrelated offenses." 290 Minn. 436, 190 N.W.2d 635. A similar conclusion was reached in *State v. Gannaway*, 291 Minn. 391, 392, 191 N.W.2d 555, 556 (1971) ("Ordinarily police officers may not, without a search warrant, make an exploratory search of a person arrested for a minor traffic offense.") [2]

In a recent case with comparable facts, an appellate court of Illinois held that a warrantless search of the trunk of an automobile following its stop by police officers because the license plate light was not illuminated and was obscured by a trailer hitch was not a valid search incident to an arrest. *People v. Blitz*, 38 Ill.App.3d 419, 347 N.E.2d 764 (1976). Accord, *People v. Edwards*, 73 Mich.App. 579, 252 N.W.2d 522, 524 (1977). ("Had a warrantless search been conducted incident to the arrest for the traffic violation that resulted in discovery of contraband not in plain view, the trial judge would undoubtedly have been correct in granting the motion to suppress.") (dictum).

▮ In *United States v. Carriger*, 541 F.2d 545, 553 (6 Cir. 1976), the court specifically condemned "the tactic of circumventing the Fourth Amendment requirements by manipulating the time of a suspect's arrest to coincide with his presence in a place which government agents wish to search." That is what happened in this case. According to the testimony of the police, a "reliable informant" notified them

---

**2.** Although it might be argued that *Curtis* and *Gannaway* are no longer good law in light of *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the search approved in *Robinson* was only of the defendant's person, pursuant to general police procedures for effectuating a full-custody arrest, and there was suggestion that Robinson's arrest for driving with a revoked license might have been merely a pretext to allow the officers to search for suspected heroin. In any event, *Robinson* is not dispositive of this case, because it deals with the search of a person pursuant to a lawful arrest, and not with the search and impoundment and later search of a vehicle incident to an arrest, conceded by the parties to have been unlawful, whose only purpose was to permit the officers to search for drugs they expected the defendant to have in his truck.

that defendant had controlled substances in his truck. Rather than applying for a search warrant to search the vehicle the officer had had under surveillance for two hours, however, he utilized arrest warrants based on defendant's failure to respond to minor traffic violations. Because he waited until defendant entered the truck and drove off before arresting him, the inference is inescapable that the arrest was made and timed primarily to facilitate the warrantless search.

■ The Supreme Court has held that to be reasonable a search must either be conducted pursuant to a valid search warrant or fit into one of the exceptions to the warrant requirement that it has defined. See, e. g., *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A pretext arrest to permit an otherwise unauthorized search is not one of these exceptions.

■ Since a pretext arrest is per se illegal, evidence obtained as a result of that arrest is inadmissible. Therefore, the open paper bag containing marijuana discovered by the officers in defendant's truck should have been suppressed as the product of an illegal arrest.

■ 2. The state attempts to avoid this conclusion by invoking the "plain-view" doctrine under which incriminating evidence may be seized without a search warrant if discovered in plain sight by a police officer. Because the marijuana was found in plain view in an open paper bag, the state contends that it was properly seized and independently admissible.

■ The admissibility of evidence seized in plain view, however, rests on the validity of the initial search. As the Supreme Court explained in *Coolidge v. New Hampshire*, 403 U.S. 443, 446, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1970):

> "What the 'plain view' cases have in common is that the police officer in each of them had a *prior justification for an intrusion* in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other *legitimate reason for being present unconnected with a search directed against the accused*—and permits the warrantless seizure." (Italics supplied.)

See, *State v. Shevchuk*, 291 Minn. 365, 366, 191 N.W.2d 557, 559 (1971) (" * * * '[O]bjects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure and may be introduced in evidence.' ") Thus, if a police officer is already engaged in a "reasonable" Fourth Amendment intrusion, allowing him to seize evidence within plain view involves no additional invasion of privacy which would make the seizure unreasonable.

■ Since defendant's arrest in this case was illegal, the arresting officer had no right to be in a position to view the contents of his truck. See, e. g., *People v. Allende*, 39 N.Y.2d 474, 384 N.Y.S.2d 416, 348 N.E.2d 891 (1976); *People v. Roberts*, 1 Ill.App.3d 571, 274 N.E.2d 688 (1971). Likewise, because of the illegality of the subsequent custody of both defendant and the truck, the police officers at the impoundment lot had no greater constitutional right to view the vehicle than did the officer at the scene of the arrest. The lack of "prior justification" for the officers' entry into the truck makes the seizure of the brown bag unreasonable and therefore illegal under the Fourth Amendment. Defendant's re-arrest at the police station for possession of marijuana must also fall because it was based on illegally seized evidence.

3. Even if the initial arrest and the seizure of the brown bag were illegal, the state argues that the final search of defendant's truck was made pursuant to his voluntary consent, and the contraband uncovered during this search was properly admissible. While the state's position is not without theoretical underpinnings, the facts of this case do not support its position.

The exclusionary rule normally makes inadmissible against the arrestee evidence that is the product of an illegal arrest. When events occurring between the time of an unlawful arrest and the ultimate discovery of incriminating evidence, as a practical matter, nullify the effect of the illegality, however, the United States Supreme Court recognizes an exception to this rule. Thus, for example, a truly *voluntary* confession which is the product of free will is considered untainted by an illegal arrest and therefore admissible. If, however, the arrest plays a significant role in inducing the confession, it will be suppressed just like any other product of an illegal arrest. *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Identical reasoning applies to a consent to search which is given following an illegal arrest. When a consent is manifestly voluntary and is not a product of an illegal arrest, it will not be deemed tainted by the arrest and will fall outside the bounds of the exclusionary rule. See, *United States v. Bazinet*, 462 F.2d 982 (8 Cir. 1972); *Phelper v. Decker*, 401 F.2d 232 (5 Cir. 1968). As the Supreme Court stated in *Brown v. Illinois*, 422 U.S. 600, 95 S.Ct. 2259, 45 L.Ed.2d 424:

> " * * * [T]he * * * apt question * * * is 'whether granting establishment of the primary illegality, the evidence to which instant *objection is made has been come at by exploitation of that illegality* or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455. (Italics supplied.)

See, also, *State v. Weekes*, Minn., 268 N.W.2d 705, 708 (filed April 7, 1978).

3. Any other holding would sanction the use by police of the product of an illegal arrest to trigger a "voluntary" consent. We decline to undermine the exclusionary rule in this fashion.

In the present case we think it plain that defendant's consent to the vehicle search was "come at by exploitation" of his illegal arrest. He consented to the vehicle search only after he had been confronted with the bag of marijuana found in his truck. He stated that since the police had the marijuana, he felt that they would have little trouble procuring a search for the entire truck and locating the remaining drugs. The crucial point is that the marijuana—illegally seized incident to an illegal arrest—was absolutely instrumental in provoking his consent.[3] Because defendant's consent was invalid as the product of an illegal arrest and an illegal search, we must therefore set aside the conviction.

Reversed.

TODD, Justice (concurring specially).

I concur in the result. However, I do not agree that the evidence in this case justifies the conclusion reached by the majority that there was a pretextual arrest. Rather, I would hold that evidence obtained under the "plain-view" doctrine is not admissible where the opportunity of the arresting officer to obtain the plain view was secured by an illegal arrest.

Further, I would hold that under the facts of this case evidence obtained pursuant to a consent to search was the direct product of an illegal arrest and therefore inadmissible against the accused.

KELLY, Justice (dissenting).

I dissent. The majority opinion totally ignores the fact that the St. Cloud police had probable cause, independent of the invalid traffic warrants, to arrest Hoven and seize and search his vehicle. This independent basis for the arrest was established by police testimony and asserted by the prosecution at the Rasmussen hearing.[1] Given this independent justification Hoven's ini-

1. The trial court did not rule on the state's alternative ground for the arrest. Instead, the court assumed the arrest pursuant to the invalid traffic warrants was unlawful but concluded that Hoven's "consent" to the search of his vehicle was voluntary.

tial arrest, rather than being pretextual as the majority opinion concludes, was lawful. See *State ex rel. Law v. District Court,* 276 Minn. 324, 150 N.W.2d 18 (1967) (power to arrest without a warrant may validate an arrest pursuant to a warrant where the warrant itself is defective). Hoven's initial arrest being lawful, it follows from the circumstances surrounding the arrest that the seizure of marijuana at the impoundment lot was lawful. It also follows, under the facts and circumstances of this case, that Hoven's consent was voluntary. I would therefore affirm the conviction.

Probable cause to arrest Hoven and seize his truck can be garnered from information the police had concerning Hoven's reputation and a tip from a reliable informant, the details of which were confirmed by independent police investigation. With respect to defendant's reputation, the police had prearrest information from several sources indicating that Hoven was involved in drug activities. First, Hoven's name had come up in several drug investigations conducted by the St. Cloud police. Second, the police had obtained information from an agent of the State Bureau of Criminal Apprehension connecting Hoven with illicit drug traffic. Third, police knew that Hoven had been arrested previously for possession of marijuana. Finally, a private citizen had contacted the police and expressed his concern that Hoven was involving his brother in drugs. This evidence of reputation is entitled to some weight in the probable cause determination. *State v. Nolting,* Minn., 254 N.W.2d 340 (1977). See *State v. Bogar,* 280 Minn. 191, 158 N.W.2d 501 (1968). It is true that reputation evidence alone is not sufficient to establish probable cause. *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Reputation evidence supported by other information, however, may establish probable cause. *State v. Nolting, supra.*

That "other information" here is an informant's tip, corroborated by independent police investigation. Information furnished by an informant may be sufficient to establish probable cause, provided the information satisfies the two-pronged test enunciated by the Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969): the information must include facts and circumstances indicating (1) that the police officer was justified in believing that the informant was credible or the information reliable, and (2) that the informant obtained his information regarding the alleged criminal activity in a reliable manner. See *State v. LaBarre,* 292 Minn. 228, 235, 195 N.W.2d 435, 440 (1972).

Turning to the informant's credibility first, the facts clearly establish that the informant was credible. A police officer testified that the informant had worked with the St. Cloud police department for approximately a year and a half, and had given the St. Cloud police information that had resulted in approximately 8 drug-related arrests and convictions. This prior reliability is sufficient to establish an informant's credibility. See *State v. Daniels,* 294 Minn. 323, 200 N.W.2d 403 (1972).

With the informant's credibility established, the facts and circumstances known to the police still must indicate that the informant obtained his information in a reliable manner. Here the informant's tip related that Hoven was in St. Cloud preparing to leave for Iowa that day, that he would be driving a pickup truck with Iowa license plates, and that he would have drugs obtained at one of two locations on the west side of St. Cloud in his possession. While the informant did not indicate how he obtained his information, the police nevertheless were justified in concluding that an informant obtained his information in a reliable manner because, prior to the arrest, they were able to corroborate independently the details of the informant's statement.

The leading case sustaining a warrantless arrest based on prearrest corroboration of the details of an informant's statement is *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). *Draper* involved a situation where a reliable informant particularly described the anticipated

arrival by train of a designated individual who would be carrying heroin. Based on this description the police set up surveillance of the train station. The police observed a man who matched the description given by the reliable informant and effected a warrantless arrest. A search incident to that arrest discovered the heroin predicted by the informant. The Court, in sustaining the arrest on the grounds of probable cause, stated that the officer had personally verified every facet of the information given by the informant except whether he had accomplished his mission.

"[W]ith every other bit of [the informant's] information being thus personally verified, [the officer] had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information—that Draper would have heroin with him—was likewise true." 358 U.S. at 313, 79 S.Ct. at 333, 3 L.Ed.2d at 332. We likewise have sustained findings of probable cause where police have corroborated the details of an informant's statement prior to making an arrest. See, e. g., *State v. Radil*, 288 Minn. 279, 282, 179 N.W.2d 602, 604 (1970); *State v. Purdy*, 278 Minn. 133, 141, 153 N.W.2d 254, 259–60 (1967). Mr. Justice Harlan, writing for the *Spinelli* majority, relied on *Draper* in stating that a reasonable inference could be drawn from such detailed information that the informant had gained his information in a reliable way.[2]

The informant's statement in this case is just as persuasive as in *Draper*. Likewise the corroboration in this case is just as convincing as in *Draper*, especially in view of Hoven's reputation. The corroboration through observation and by other matters within the officer's knowledge justified an inference that the informant obtained his information in a reliable manner. First, the informant specifically identified Hoven by name and Hoven was known by the St. Cloud police. Second, the informant told the police that Hoven would be driving a pickup truck with Iowa plates and would be obtaining drugs at either of two locations on the west side of St. Cloud. Although the record does not reveal whether the informant specifically identified either location, the officer dispatched to locate Hoven observed a truck bearing Iowa license plates in front of the residence of another person whose name had come up in connection with drug activity. When the police officer located the truck, he ran a license check which revealed that the truck was registered to a salvage operation in Iowa. Because the police officer had prior knowledge that Hoven was associated with a salvage yard in Iowa, he placed the truck under surveillance. The officer then observed someone get in the truck and drive away. The officer followed the truck and visually identified the driver as Hoven. It was not until this point that the police had corroborated the informant's statement that Hoven was in St. Cloud, that he would be driving a pickup truck bearing Iowa license plates, and that he would be leaving for Iowa that day. As in *Draper, supra*, the police had personally verified every facet of information given by the informant except whether Hoven "had accomplished his mission." The informant's statement being fully corroborated, the police had probable cause to arrest Hoven.

Implicit in the majority opinion, however, is the suggestion that the police had probable cause at an earlier time and should have obtained a warrant either before attempting to locate the truck or after placing it under surveillance. I strongly disagree. Prior to locating the truck the police did not have sufficient information to establish probable cause. The only information they had was that supplied by the informant's tip and Hoven's reputation. The infor-

---

**2.** It could be argued that the *Spinelli* Court's treatment of *Draper* limited the applicability of police corroboration of the details of information supplied by an informant to the second prong of the *Aguilar-Spinelli* test, i. e., whether the informant was credible. See Mr. Justice White's concurring opinion in *Spinelli*, 393 U.S. at 423, 427–29, 89 S.Ct. 584; McCarr, Minnesota Practice, § 120. I agree with then Judge Blackmun, now Mr. Justice Blackmun, that *Draper* retains its viability. See *United States v. Mitchell*, 425 F.2d 1353 (8 Cir. 1970). Accord, *United States v. Young*, 567 F.2d 799 (8 Cir. 1977).

mant's tip, however, would not have supported an application for a search warrant because the tip contained no statement of the underlying facts and circumstances from which a judge might conclude that the informant had obtained his information in a reliable manner. See *Aguilar-Spinelli, supra.* Clearly, reputation evidence would not cure this defect.

Nor were the police after having located the truck unreasonable in setting up surveillance. Prior to identifying Hoven the police had not yet corroborated a critical element of the informant's tip—that Hoven was the driver of the truck. Absent Hoven's identification the nexus between Hoven and the contraband was missing. Although it could be argued that there was sufficient corroboration of the informant's tip which, together with evidence of Hoven's reputation, would have supported an application for a search warrant, I cannot fault the police for maintaining surveillance until the informant's tip was fully corroborated.[3] "* * * [P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene * * *." *State v. Harris*, 265 Minn. 260, 264, 121 N.W.2d 327, 331 (1963). Clearly, when Hoven drove the truck away the police had probable cause to arrest him and seize the truck and search it apart from the traffic warrants.

Because probable cause culminated when Hoven was driving away, sufficient exigent circumstances existed to dispense with the warrant requirement. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Here the police had probable cause to believe the truck was being used at the time of the arrest for an unlawful purpose—to carry drugs. See *United States v. Bozada*, 473 F.2d 389 (8 Cir. 1973). Therefore, the police not only had an independent basis for Hoven's arrest, but also, because of the exigent circumstances surrounding the arrest and seizure, could have searched Hoven's truck at the scene for evidence of the crime.[4] Therefore a subsequent warrantless search at the impoundment garage also would have been proper. *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney, supra.* The fact that the police chose instead to seize the truck is not constitutionally significant. *Id.* In any event the police were lawfully in a position to observe the marijuana in the back of the truck. It therefore follows that its seizure was lawful and that it was properly admitted into evidence.

The marijuana so observed and seized also played another role in that Hoven, upon being confronted with the marijuana, "consented" to a further search of the truck. But because of the lawfulness of the seizure, defendant's consent was not the product of, or compelled by, the circumstances surrounding an illegal arrest, but instead was the product of a lawful arrest. Therefore the question is not whether Hoven's consent was tainted by the illegal arrest but whether, under all the facts and circumstances, Hoven's consent was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). I believe that the state has met its burden in proving that Hoven's consent was freely and voluntarily given. Hoven consented to the search after being informed by the police that they intended to secure a search

---

**3.** Even assuming, arguendo, that the police had probable cause to arrest Hoven, it would not follow that the failure to obtain a warrant invalidates any subsequent seizure: "[W]e know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant is not obtained at the first practical moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the ·time of the arrest. [Citations omitted.] The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." *Cardwell v. Lewis*, 417 U.S. 583, 595–96, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325, 338 (1974) (plurality opinion).

**4.** "The existence of exigent circumstances is determined as of the time of seizure rather than as of the time of [the] search." *United States v. Young, supra*, 567 F.2d at 802.

858

warrant. During this same conversation the police informed Hoven that he had a right to remain silent, that he had a right to discuss the matter with an attorney, and that he had a right to refuse a consensual search. Notwithstanding those admonitions, Hoven signed a voluntary consent form and thereafter directed the police to the location of additional contraband in the truck. I therefore conclude that the contraband seized was properly admitted into evidence and would affirm Hoven's conviction.

I cannot help but add some further comments. Nothing in the record supports the inference drawn by the majority opinion that the police engaged in a deliberate attempt to circumvent the requirements of the Fourth Amendment. After Hoven's initial arrest, the arresting officer requested, and was given, permission to search Hoven's truck. When the officer began to open a suitcase, Hoven withdrew his consent, whereupon the officer immediately stopped the search. Before the search was actually conducted the police made sure that Hoven understood his right to refuse to consent, even to the point of trying to dissuade him from consenting, before they proceeded to search the truck without a warrant. I am at a loss to understand how such police conduct can be interpreted as an attempt to conduct an "otherwise illegal search."

I am more troubled, however, by the majority opinion's characterization of the "arrest" pursuant to the traffic warrants as pretextual. The warrants were issued before the police were informed of Hoven's suspected activity which led to his arrest. In addition the police were informed that Hoven was leaving town that day. Under these circumstances the police had a duty to arrest Hoven pursuant to the outstanding arrest warrants. Had Hoven been a private citizen suspected of no other illegal activity, the police could have effected a custodial arrest and conducted a limited search of Hoven's person. See *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The police also might have impounded the truck and inventoried its contents. See *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *City of St. Paul v. Myles*, 298 Minn. 298, 218 N.W.2d 697 (1976). Yet as I understand the majority opinion would impose greater burdens on the police when they are dealing with suspected felons than with other citizens.

I would affirm the trial court.

PETERSON, Justice (dissenting). I join in the dissent of Mr. Justice KELLY.

SCOTT, Justice (dissenting). I join in the dissent of Mr. Justice KELLY.

OTIS, Justice (dissenting). I join in the dissent of Mr. Justice KELLY.