THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GARY SCUDDER, Defendant-Appellant.

Second District   No. 2—87—0450

Opinion filed October 26, 1988.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's office, of Elgin, for appellant.

Eugene L. Stockton, State's Attorney, of Dixon (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Gary Scudder, was convicted in the circuit court of Lee County of possession of instruments adapted for use of controlled substances or cannabis by subcutaneous injection (Ill. Rev. Stat. 1987, ch. 38, par. 22—50) and sentenced to a 120-day term of periodic imprisonment. On appeal, defendant contends that a search of his car following his arrest was illegal because the police deliberately refrained from arresting defendant until he was in his car. We reverse and remand.

The trial court denied defendant's pretrial motion to suppress hypodermic needles and syringes found in his car subsequent to his arrest on January 22, 1986. At trial, David Fischer testified that he was driving down College Street in Dixon with his wife at about 11 a.m. on the morning of January 22. Defendant's car ran a stop sign and stopped several feet into the intersection of College and Fourth Streets. Defendant and Fischer both exited from their cars after pulling over. Defendant punched Fischer, breaking his nose.

Another man then went up to defendant and spoke to him for about a minute. Defendant then left and went to a nearby alley. Fischer followed him on foot. When the prosecuting attorney asked what happened next, Fischer responded as follows:

"Well, I saw him putting something—well, not putting. I saw him messing around with a muffler that was beside the road and then head back in this direction."

Fischer then stated that he assumed defendant was hiding something. Fischer found a plastic bag near the muffler. He suspected that the bag contained drugs and took it to Lieutenant Hagen of the

Dixon police department.

On cross-examination, defendant's attorney asked if Fischer saw defendant put anything under the muffler. Fischer responded "M-hm." He then stated that the object placed under the muffler was shiny and looked like a plastic bag.

Lieutenant Larry Hagen testified that the plastic bag which David Fischer turned over to him on January 22, 1986, contained four syringes, a spoon, and some paper towels. Hagen later instructed Detective Harry Ulferts to arrest defendant. On cross-examination, Hagen stated that he did not spend much time with Fischer on January 22 because Hagen was about to go out of town for a few hours. Hagen returned to the police station later that day and signed a complaint against defendant in the late afternoon or early evening.

Hagen further testified that defendant appeared at the Dixon police station on January 22 before he was taken into custody by Detective Ulferts. This occurred after Hagen returned from his brief trip out of town. When defendant's attorney asked if defendant inquired at this time as to whether there was a complaint out for his arrest, Hagen said, "That sounds familiar." Hagen testified that he was not sure whether he talked to defendant at this time. Hagen had told other individuals at the police station that he intended to sign a complaint against defendant. Neither Hagen nor anyone else at the station told defendant that a complaint was being prepared against him. Hagen testified that he thought Detective Ulferts was at the station when he told Ulferts to go out and arrest defendant.

Detective Ulferts testified that Lieutenant Hagen made the above request by radio. Ulferts then stopped defendant's car, which pulled into a gas station. Ulferts arrested defendant and searched the car. He found two hypodermic needles and some syringes under the driver's seat. The State introduced into evidence the needles and syringes found in the car.

Ulferts stated during cross-examination that Hagen did speak to him at the police station about the complaint against defendant, which Hagen was preparing. Ulferts arrested defendant at about 5 p.m, after Hagen advised him by radio that the complaint had been completed. Ulferts had left the station about 10 minutes earlier. Immediately prior to leaving, Ulferts saw defendant in the police station at the front desk. Although Ulferts was aware that Hagen was preparing a criminal complaint against defendant, Ulferts did not arrest defendant at the station or ask him to wait until the complaint was finished. Ulferts stated that it would have been normal procedure for the arrest to be executed in the police station under such

circumstances or for the officer to request that the individual wait until the complaint against him or her was completed.

The arrest took place approximately 10 minutes after Ulferts saw defendant at the police station. When defendant's attorney asked if Ulferts was on any particular mission when he left the station, he responded as follows:

"I knew that a complaint was being prepared for Gary Scudder and I was going to stop him when he left the department—or when the complaint was finished."

Ulferts testified that he thought he saw defendant exit the police station. If he did not see defendant leave the station, he saw defendant shortly thereafter. Ulferts followed defendant until he was advised by radio that the complaint against defendant had been completed. Ulferts then pulled defendant's car over, arrested defendant and searched the car.

■ During closing argument, defendant's attorney renewed his motion to suppress the needles and syringes which were seized from defendant's car. The trial court denied the motion and found defendant guilty. Defendant now appeals. We note that in reviewing the denial of the motion to suppress, this court may consider testimony presented at trial. *People v. Bradney* (1988), 170 Ill. App. 3d 839, 845.

■ Citing *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, the State asserts that the search of defendant's automobile was a valid search incident to his arrest. The *Belton* case, however, does not purport to modify the general rule that the police may not use an arrest as a pretext to search for evidence. (*United States v. Lefkowitz* (1932), 285 U.S. 452, 467, 76 L. Ed. 877, 884, 52 S. Ct. 420, 424.) As the court stated in *Taglavore v. United States* (9th Cir. 1961), 291 F.2d 262, "[T]he *search* must be incident to the *arrest* and not vice versa." (Emphasis in original.) (291 F.2d at 265.) A number of courts have therefore condemned the tactic of circumventing the fourth amendment warrant requirement by manipulating the timing of a suspect's arrest so that it occurs when the suspect is present in a place which law enforcement authorities wish to search. See *United States v. Carriger* (6th Cir. 1976), 541 F.2d 545, 553; *McKnight v. United States* (D.C. Cir. 1950), 183 F.2d 977, 978; *Blazak v. Eyman* (D. Ariz. 1971), 339 F. Supp. 40, 42; *United States v. Alberti* (S.D.N.Y. 1954), 120 F. Supp. 171, 172; *United States v. Johnson* (D.D.C. 1953), 113 F. Supp. 359, 360; *State v. Hoven* (Minn. 1978), 269 N.W.2d 849, 852-53.

In *McKnight*, the police obtained a warrant to arrest defendant

on gambling charges. The next day, a few officers kept defendant under surveillance. The officers were under instructions to refrain from arresting defendant until he entered a certain home. The officers did not have a search warrant for this house. Once defendant entered the house, the officers broke in, arrested him, searched the home, and seized evidence of gambling. The court held that the arrest and search were illegal, stating as follows:

> "The police planned to and did reject a convenient present opportunity to make a lawful arrest in a public street and, without a search warrant or enough information to get one, broke into a house in order to seize evidence they hoped to find there. They found it and seized it. We think this is a plain violation of the prohibition in the Fourth Amendment of the Constitution against unreasonable searches and seizures." *McKnight*, 183 F.2d at 978.

Here, as in *McKnight*, the police passed up a convenient opportunity to arrest defendant and then found incriminating evidence at the place in which they effectuated the arrest. In the case at bar, the initial opportunity to arrest defendant could hardly have been more convenient since he walked right into the police station. Nevertheless, the State asserts that *McKnight* is inapposite because the police had probable cause in the instant case to search defendant's car, the police had already completed the paperwork relating to defendant's arrest in *McKnight* when the initial arrest opportunity manifested itself, and *McKnight* involved a search of a home, not a car.

■ Probable cause in the context of automobile searches has been defined as a knowledge of certain facts which would cause a reasonably prudent individual to believe that a crime had occurred and that evidence relating to the crime was in the automobile. (*People v. Valdez* (1980), 81 Ill. App. 3d 25, 28.) Even if the syringes Fischer discovered gave the police reason to believe defendant had committed the offense with which he was later charged, they had no information which would have led them to believe that further evidence relating to that offense was in defendant's car. The search of defendant's automobile cannot be justified on the basis of probable cause.

■ The fact that Lieutenant Hagen had not finished typing the complaint when the initial opportunity to arrest defendant presented itself has no significance whatsoever. If a police officer does not have an arrest warrant or reasonable grounds to believe that such a warrant has been issued, the officer may still effectuate an arrest if he or she has reasonable grounds to believe that the person to be ar-

rested is committing or has committed a crime. (Ill. Rev. Stat. 1987, ch. 38, par. 107—2(c).) If criminal charges are initiated by means of a complaint, there is no requirement that the complaint be completed before the arrest occurs. The State's assertion that this factor provides a valid explanation for the delay in arresting defendant and distinguishes this case from *McKnight* is completely without merit.

We also deem it insignificant that the instant case involves an automobile search rather than a search of a home as in *McKnight*. In *State v. Hoven* (Minn. 1978), 269 N.W.2d 849, the Minnesota Supreme Court held that a search of defendant's truck purportedly incident to his arrest was illegal when the police had arrested defendant on outstanding warrants for failure to respond to two minor traffic violations, but had delayed the arrest so that it would occur while defendant was in his truck. (*Hoven*, 269 N.W.2d at 852-53.) The decisive factor in *McKnight* and *Hoven* was that the police manipulated the timing of the arrests so they would occur when the defendants were in a place that the police wished to search, but had no legal basis for doing so. In both cases, the police were attempting to exploit the search incident to arrest doctrine in order to provide the necessary justification.

The case at bar clearly involves the same type of situation. Detective Ulferts testified that the reason he left the station on January 22 was to arrest the defendant. As he was leaving, he saw defendant near the front desk in the police station. Instead of arresting defendant at this time, he left the station in a squad car. After defendant left, Ulferts followed him in the squad car until Lieutenant Hagen told him over the radio to make the arrest. The arrest occurred about 10 minutes after Ulferts saw defendant at the station. Under these circumstances, there is no doubt that the police deliberately passed up a convenient opportunity to arrest defendant in order to enable them to later make the arrest in a place they desired to search.

We recognize that the question of whether a fourth amendment violation has occurred is normally dependent upon an objective assessment of a police officer's actions in light of the facts and circumstances confronting the officers at the time. (*Scott v. United States* (1978), 436 U.S. 128, 137, 56 L. Ed. 2d 168, 177, 98 S. Ct. 1717, 1723.) We believe that the failure of Lieutenant Hagen and Detective Ulferts to arrest defendant when he walked into the Dixon police station was objectively unreasonable. Ulferts admitted that the failure of the police to arrest defendant in the station or ask him to wait there was contrary to normal procedure. The subsequent search

of defendant's automobile was made possible by this unreasonable act.

■ Permitting police officers to search individuals placed under arrest and the immediately surrounding area serves to protect the officers by allowing them to remove any weapon that might be used by the suspect to effect an escape or to resist arrest. (*Belton*, 453 U.S. at 457, 69 L. Ed. 2d at 773, 101 S. Ct. at 2862.) As the court stated in *McKnight*, however:

"Neither policemen nor private citizens can justify breaking into a house, or other violence, by deliberately creating an alleged necessity for it." (183 F.2d at 978.)

Here, the police officers created the necessity to search defendant's automobile by failing to arrest him a few minutes earlier inside the police station. The rather transparent attempt of the Dixon police officers to avail themselves of the search incident to arrest doctrine by manipulating the timing of defendant's arrest was objectively unreasonable. Accordingly, we conclude that the search of defendant's car subsequent to his arrest was illegal and the evidence found as a result should have been suppressed by the trial court.

■ The State contends that the admission of the hypodermic needles and syringes seized from defendant's car was harmless error due to the overwhelming nature of the other evidence against defendant. We disagree. The remaining evidence is the plastic bag with syringes found in an alley by David Fischer and Fischer's testimony connecting defendant to the bag. Fischer's testimony was inconsistent with regard to the issue of whether he actually saw defendant place an object under the muffler in the alley. When Fischer was asked on direct examination what he saw after defendant went into the alley, he stated:

"Well, I saw him putting something—well, not putting. I saw him messing around with a muffler that was beside the road and then head back in this direction."

It appears that Fischer started to say that he saw defendant put something near the muffler, but then backed up and stated that he only saw defendant messing around with the muffler. On cross-examination, Fischer changed his testimony and stated that he saw defendant place a shiny object that looked like a plastic bag under the muffler. Because of this inconsistency in Fischer's testimony connecting defendant to the plastic bag containing syringes, we cannot conclude that the error committed by the trial court in denying defendant's motion to suppress was harmless beyond a reasonable doubt.

Accordingly, we reverse defendant's conviction and the denial of his motion to suppress and remand the cause to the circuit court of Lee County for a new trial.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

LINDBERG, P.J., and INGLIS, J., concur.