**STATE of Minnesota, Appellant,**

v.

**Brian Russell TOMAINO, Respondent.**

**No. C4–00–1964.**

Court of Appeals of Minnesota.

May 8, 2001.

Mike Hatch, Minnesota Attorney General, St. Paul, MN; and Marvin E. Ketola, Carlton County Attorney, Dennis Genereau, Jr., Assistant County Attorney, Carlton, MN, (for appellant).

Joanna M. Wiegert, Duluth, MN, (for respondent).

Considered and decided by HANSON, Presiding Judge, TOUSSAINT, Chief Judge, and CRIPPEN, Judge.

## OPINION

HANSON, Judge

The state contests a pretrial order suppressing evidence of a controlled substance found in respondent's vehicle and dismissing a complaint charging fifth-degree possession of a controlled substance. The state argues that the district court erred in ruling that the police officer, after lawfully stopping respondent's vehicle for a cracked windshield, did not have reasonable suspicion to prolong the stop based on respondent's nervousness and possession of a marijuana-shaped key chain. The state also contests the district court's conclusion that respondent's admission to the presence of the controlled substance was coerced and not voluntary. We affirm.

## FACTS

On the morning of June 1, 2000, Minnesota State Trooper Darren Juntunen saw a brown Chevrolet van with a cracked windshield pass the location where he had parked his squad car in the median of Interstate 35 in Carlton County. Juntunen pulled over the van, approached the vehicle, and asked the driver, Brian Tomaino, for his license.

While looking into Tomaino's van, Juntunen noticed a key chain in the shape of a marijuana leaf hanging from the ignition, but he saw no drug paraphernalia or any physical evidence of drugs. He requested that Tomaino accompany him to the squad car while he ran a check on Tomaino's driver's license. Tomaino cooperated, Juntunen verified that the license was val-

id and issued Tomaino a citation for the cracked windshield.

While Tomaino was in the squad car, Juntunen believed he perceived several indications of nervousness: shaky hands, restlessness, and a pulse in Tomaino's stomach. Juntunen began a series of questions that were unrelated to the purpose of the stop. He asked why Tomaino was so nervous. Tomaino responded "cops make me nervous." He asked if Tomaino had been using alcohol or prescription drugs. Tomaino looked away, paused and then denied any such use. Juntunen concluded that Tomaino's behavior was consistent with someone deceitful or under the influence.

Juntunen did not advise Tomaino that he was free to leave. Instead, he sought consent to search the van, which Tomaino twice denied. When Juntunen announced that he would summon a narcotics canine to the scene, Tomaino admitted that he had psilocybin mushrooms in the van. Based upon this admission, Juntunen searched the van and found one gram of mushrooms.

Tomaino was charged with felony possession of a controlled substance under Minn.Stat. § 152.025, subd. 2(1) (2000). Following an omnibus hearing on September 5, 2000, the district court granted Tomaino's motions to suppress the evidence obtained from the search of his van and to dismiss the charges.

## ISSUES

I. Did the district court err in concluding that the trooper did not have a sufficient basis for continuing to detain Tomaino?

II. Did the district court err in concluding that the state did not prove that Tomaino's admission and ultimate consent to the search of his vehicle was voluntary?

## ANALYSIS

 In reviewing a district court's determinations of the legality of a limited investigatory stop, we review questions of reasonable suspicion de novo. *State v. Munson,* 594 N.W.2d 128, 135 (Minn.1999). We will find that the continued investigatory stop of a vehicle is lawful where the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Haataja,* 611 N.W.2d 353, 354 (Minn.App. 2000) (quotation omitted), *review denied* (Minn. July 25, 2000).

### I.

 The parties agree that the cracked windshield provided a legal basis for the investigatory stop. The courts have not imposed a rigid time limit on the permissible duration of a detention that follows a lawful stop. *State v. Blacksten,* 507 N.W.2d 842, 846 (Minn.1993). The general rule is that an investigatory detention "may not continue indefinitely but only as long as reasonably necessary to effectuate the purpose of the stop." *State v. Bell,* 557 N.W.2d 603, 606 (Minn.App. 1996) (quotation omitted), *review denied* (Minn. Mar. 18, 1997). Therefore, Juntunen's continued detention of Tomaino for suspicion of possession of a controlled substance was valid only if supported by a distinct set of "particularized and objective" facts supporting a reasonable suspicion of criminal activity. *Haataja,* 611 N.W.2d at 354.

 The district court concluded that Tomaino's nervousness and the marijuana symbol on his key chain did not provide reasonable suspicion of criminal activity to justify his continued detention. Determination of reasonable suspicion requires

consideration of the totality of circumstances. *State v. Martinson*, 581 N.W.2d 846, 852 (Minn.1998). In arriving at a reasonable suspicion of criminal activity, an officer may make inferences and deductions that might elude an untrained person. *Appelgate v. Commissioner of Pub. Safety*, 402 N.W.2d 106, 108 (Minn.1987). But the officer must demonstrate objective facts to justify that suspicion and may not base it upon a mere hunch. *State v. Cripps*, 533 N.W.2d 388, 391–92 (Minn. 1995).

■ While an officer's perception of a defendant's nervousness may contribute to an officer's reasonable suspicion, this indicator is not sufficient by itself and must be coupled with other particularized and objective facts. *See State v. Wiegand*, 621 N.W.2d 476, 477 (Minn.App.2001) (combining nervousness with officer's perception of glassy eyes and slow speech); *see also United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir.1998) ("It certainly cannot be deemed unusual for a motorist to exhibit signs of nervousness when confronted by a law enforcement officer. * * * We conclude that any suspicion associated with Beck's nervous demeanor during the traffic stop to be, at best, minimal.").

The district court found Juntunen's description of Tomaino's nervousness inadequate and concluded that the nervousness was the product of his continued detention. Nervousness alone is not an objective fact, but rather a subjective assessment derived from the officer's perceptions. The symbol on Tomaino's key chain, while indiscreet, did not justify more than a hunch on Juntunen's part that the van contained a controlled substance. We find that the district court properly concluded that these two factors together did not provide Juntunen with a reasonable suspicion to justify Tomaino's continued detention.

## II.

■ The state challenges the district court's conclusion that the state failed to show that the search was made pursuant to a valid consent. The state argues that, rather than consenting to the search, Tomaino admitted to the presence of a controlled substance in the van, and this admission gave Juntunen probable cause to search the vehicle, with or without consent. However, Tomaino's admission came while he was being illegally detained and was the product of that detention. As such, evidence of Tomaino's statement was inadmissible and, likewise, could not be used to provide probable cause for the search.

In *State v. Hoven*, 269 N.W.2d 849 (Minn.1978), the supreme court considered whether a confession and consent to a search after an illegal arrest was so tainted by the illegal arrest as to be inadmissible. The court concluded:

If, however, the arrest plays a significant role in inducing the confession, it will be suppressed just like any other product of an illegal arrest.

*Id.* at 854. The court quoted from *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963) as follows:

[T]he * * * apt question * * * is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means *sufficiently distinguishable to be purged of the primary taint.*"

*Id.* (emphasis added) (quotation omitted). *See also State v. Shellito*, 594 N.W.2d 182, 186–187 (Minn.App.1999).

The means of obtaining Tomaino's admission were not sufficiently distinguishable from the illegal detention. Juntunen never informed Tomaino that the investi-

gation had ended and he was free to leave. Instead, he continued to detain Tomaino and asked a sequence of questions designed to place Tomaino into an investigatory corner from which the only apparent exit was an admission of information that Tomaino had no obligation to provide. The district court's conclusions that Tomaino's admission was coerced (i.e., the product of the illegal detention) and that the state had failed to prove that Tomaino voluntarily consented to a search of his van, were supported by the record and applicable law.

## DECISION

Because the officer did not have a reasonable suspicion to continue the traffic stop after issuing the initial citation, or probable cause to search the vehicle, we affirm the district court's suppression of evidence and dismissal of the charges.

**Affirmed.**