PEOPLE v EDWARDS

1. SEARCHES AND SEIZURES—PLAIN VIEW—FLASHLIGHTS.

Mere use of a flashlight to look into a car does not constitute a search where the objects revealed would be visible in ordinary daylight and are in plain view.

2. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—AUTOMOBILES—TRAFFIC VIOLATIONS—SEARCH INCIDENT TO ARREST—CONTRABAND.

A motion to suppress evidence should be granted where a search of an automobile without a warrant was conducted incident to an arrest for a traffic violation and that search resulted in the discovery of contraband not in plain view.

3. SEARCHES AND SEIZURES—AUTOMOBILES—TRAFFIC VIOLATIONS—EVIDENCE—HEROIN—PLAIN VIEW.

Evidence is not obtained by means of an unreasonable search and seizure where a police officer witnesses a moving traffic violation, stops the vehicle, and is lawfully in a place where he has a right to be when he observes contraband in plain view.

4. SEARCHES AND SEIZURES—AUTOMOBILES—TRAFFIC VIOLATIONS—PRETEXT TO SEARCH.

Police officers should not be obliged to ignore traffic offenses merely because they suspect the driver of other, greater offenses; they need only be prevented from using such offenses as a pretext to search.

Appeal from Genesee, Donald R. Freeman, J. Submitted November 4, 1976, at Lansing. (Docket No. 28402.) Decided February 3, 1977.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 68 Am Jur 2d, Searches and Seizures §§ 23, 88.

Search and seizure: Observation of objects in "plain view." 29 L Ed 2d 1067.

[2, 4] 68 Am Jur 2d, Searches and Seizures § 39.

Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.

George H. Edwards was charged with possession of heroin. Defendant moved to suppress evidence. Motion granted and information quashed. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Martin F. Palus,* for defendant.

Before: DANHOF, C. J., and M. J. KELLY and D. E. HOLBROOK, JR., JJ.

DANHOF, C. J. The prosecutor appeals from the trial court's order granting defendant's motion to suppress from use in evidence a packet of heroin seized by police officers after they stopped defendant's automobile to issue a traffic ticket.

Although the facts of this case are somewhat involved, the undisputed sequence of events was as follows: Officer Perry was conducting surveillance of Clyde Edwards' house. He was in an unmarked car and wore an outer garment to conceal his uniform. Clyde Edwards' house was being kept under surveillance based on anonymous tips of "illegal activities" and Clyde Edwards' suspected involvement in a burglary that had occurred some months earlier. Officer Perry had information that led him to believe that Clyde Edwards' Thunderbird automobile had been used in the commission of the burglary, and he had learned that there was a warrant outstanding for Clyde Edwards' arrest on a traffic charge. Officer Perry observed two men, whose identities he did not know, exit Clyde Edwards' house and enter the Thunderbird. It is

not clear whether Officer Perry knew that neither of the men was Clyde Edwards. Officer Perry testified that he did not approach the two men to execute the outstanding warrant for Clyde Edwards' arrest because the neighborhood was bad and because he feared that violence might ensue if he approached the men in his unmarked car.

After verifying that the warrant for Clyde Edwards' arrest was still outstanding, Officer Perry radioed for a marked car to intercept the Thunderbird. Officer Gilbert, in the marked car, heard over the radio that there was an outstanding warrant for Clyde Edwards' arrest, but testified that he determined to stop the Thunderbird only if he observed a traffic violation. Officer Gilbert also testified that he would not have begun to follow the Thunderbird had he known Clyde Edwards was not in it. In fact, the car was occupied by defendant George Edwards, Clyde Edwards' brother, and a male passenger.

After following the Thunderbird for some distance, Officer Gilbert observed it negotiate an unsignaled left turn and turned on his cruiser's flasher. While following the subject vehicle through the turn, Officer Gilbert observed the passenger raising an unidentified can to his lips. While his partner approached the Thunderbird on the driver's side to issue a ticket, Officer Gilbert approached the passenger side, where his flashlight revealed that the passenger was holding an open beer can. The passenger stepped out of the Thunderbird at Officer Gilbert's request, bringing the can with him. After the passenger got out, Officer Gilbert placed the can atop the Thunderbird, informed the passenger that he was under arrest for consuming alcoholic beverages on a public highway, and placed the passenger in the

back of his cruiser. While the passenger was climbing out of the Thunderbird Officer Perry's flashlight revealed a clear plastic bag containing a blackish-brown granulated substance protruding from under a pillow on which defendant was sitting. The substance proved to be heroin.

The trial judge did not believe the reasons offered by Officer Perry for not approaching the two men before they entered the Thunderbird; he was "convinced" that "he [Perry] didn't want that car stopped. What he really wanted was a search". The trial judge thought that Perry ordered Gilbert to follow the car until he observed some basis for effecting an arrest so that a search could be conducted incident thereto. Absent some indication that Clyde Edwards was in the car, the trial judge thought that the existence of a warrant for his arrest could not serve as a basis for justifying the stop under the reasonableness test for the stop and search of moving vehicles set out in *People v Lillis,* 64 Mich App 64, 68; 235 NW2d 65 (1975). He concluded that "this is a case where the tail was wagging the dog", because the officers had no information that Clyde Edwards was in the car. The trial judge also thought that Officer Gilbert's observing the passenger drink from an unidentified can could not support the stop. What "most impressed" the trial judge, however, was that Perry had ordered the Thunderbird stopped before any traffic violation was observed: "He said that before the car had been involved in any traffic violation at all. And that doesn't seem justifiable to me". Finally, the trial judge thought that "the pretense of stopping the vehicle based upon viewing of a traffic violation, where information had already been received that that vehicle should be stopped, I think violates the spirit of the protec-

tion" against unreasonable search and seizure. The trial judge explained that this was so because the normal sequence ("legitimate" arrest followed by search) was not present here: "I think this is in reverse order".

It should be noted at the outset that the trial judge did not find that Officer Gilbert did not see the moving violation; indeed, he appears to have assumed for the purpose of his ruling that the violation did occur. Nor did he find that the beer can, and then the plastic bag containing the heroin, were not in plain view. The trial judge also found Officer Perry's use of his flashlight to look into the car unobjectionable, and properly so; mere use of a flashlight does not constitute a search when the objects revealed would be visible in ordinary daylight, and the plain view rule applies in either case. *People v Whalen,* 390 Mich 672, 679; 213 NW2d 116 (1973), *People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963). In effect, then, the trial judge held that because Officers Perry and Gilbert had other, albeit arguably insufficient, reasons for stopping the car (the possible execution of the arrest warrant, an unconfirmed suspicion that the passenger was drinking beer, and, inferentially, a suspicion that the car contained contraband), Gilbert was obliged to ignore the traffic violation he witnessed. But *cf. People v Lillis, supra,* at 70–71, quoting *Adams v Williams,* 407 US 143, 145; 92 S Ct 1921; 32 L Ed 2d 612 (1972). Thus a moving violation that would ordinarily have been a proper basis for a stop and the issuance of a traffic ticket (and routine investigation of driver's license and registration) had to be overlooked because the officers had other reasons for wanting to stop the car.

Had a warrantless search been conducted inci-

dent to the arrest for the traffic violation that resulted in discovery of contraband not in plain view, the trial judge would undoubtedly have been correct in granting the motion to suppress. *People v Gonzales,* 356 Mich 247; 97 NW2d 16 (1959), see *People v Blitz,* 38 Ill App 3d 419; 347 NE2d 764 (1976) (search by officer who stopped defendant for a minor traffic offense after observing defendant leave a suspected drug house was unreasonable, and contraband found in car trunk should have been suppressed). In our view, however, the instant case is not governed by the law relating to searches incident to pretextual arrests. Leaving aside, for the moment, the sequence problem regarded as decisive by the trial judge, the facts disclose the following: Officer Gilbert stopped the Thunderbird after he observed a moving violation. While his partner approached the driver's door, Officer Gilbert approached the passenger side, where his flashlight revealed that the passenger had an open can of beer. This being a violation of statute, MCLA 436.34a; MSA 18.1005(1), Officer Gilbert properly ordered the passenger out of the car and placed him under arrest for the misdemeanor being committed in his presence. When the passenger alighted from the car the heroin was exposed, in plain view. Thus it was discovered without a search, and therefore the original arrest for the moving violation was not used as a pretext to search under the plain view rule. *People v Whalen, supra; People v Kuntze, supra;* see *State v Glasper,* 84 Wash 2d 17; 523 P2d 937 (1974) (police who learned that an arrest warrant was outstanding for the owner of a suspicious vehicle had reasonable justification for stopping the vehicle, and evidence of grand larceny in plain view in the car's partially open trunk was properly admitted); *cf. People v McPherson,* — Colo —; 550 P2d 311

(1976) (police stopped and searched defendant's car after he drove away from a house that was under surveillance; the marijuana found in his car was suppressed, the court noting that defendant had committed no traffic violation before being stopped).

The instant case is clearly distinguishable from *Amador-Gonzalez v United States,* 391 F2d 308 (CA 5, 1968), relied upon by defendant. In *Amador-Gonzalez* the Court merely held that the search of defendant's vehicle could not be justified as a border search, nor under the *Carroll* doctrine *(Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 [1925]), permitting warrantless searches of automobiles upon probable cause. *Id,* 312. Also, because a search was clearly involved (defendant, who was suspected of smuggling narcotics, was stopped for a minor traffic violation and the officer extracted the heroin from within the car's bulging upholstery), the case did not come within the plain view exception. In *Amador-Gonzalez* the Court held that the stop was a pretext arrest:

"Gonzalez was arrested for a minor traffic offense. It is not clear at just what time the traffic arrest turned into a narcotics arrest, but it could not have been until *after* the search." *Id,* 313 (emphasis in original).

That the *Amador-Gonzalez* Court considered the plain view exception as a possible basis for admitting the heroin suggests that even evidence obtained as a result of a "pretext" arrest is admissible so long as the arrest is not used as a pretext for conducting a search. This inference is borne out by *United States v Hollman,* 541 F2d 196 (CA 8, 1976). There the Court assumed, for the purpose of analysis, that the narcotics officers who stopped defendant for defective taillights did so as a pre-

text. *Id,* 198. Moreover, the decision to stop the car had been made before the defective taillights were observed. The Court's reasoning is illuminating:

"On the other hand, the facts of this case, taken in the light most favorable to the government, do not support a conclusion that there was no probable cause at all to stop the car. If a traffic officer had observed the defective lights, it cannot be doubted that he could properly have stopped the car. The detectives in this case likewise had probable cause to stop the car; what they lacked was a justification to conduct an exploratory search as an incident to that stop or any arrest based upon such probable cause.

*"The distinction between this case and others previously cited is the occurrence of an event before formal arrest that supplied an independent and viable basis to support an arrest on the narcotics possession charge.* While two of the officers were questioning Bolden about his driver's license and before any of them had used the pretextual stop as a springboard to make a search incident to arrest, appellant threw the box of heroin packets out of the car window. The officers recovered the packets outside the car and recognized them as apparently containing heroin. These objective facts, coupled with their knowledge of Bolden's reputation and appellant's suspected activities, supplied probable cause to make an arrest on the narcotics charge." *Id,* 198–199 (emphasis added).

If here, as in *Hollman, supra,* the stop were clearly pretextual, that fact would not by itself render the heroin inadmissible because the stop was not used as a pretext to search. Having witnessed a moving violation and stopped the vehicle, Officer Gilbert was lawfully in a place where he had a right to be when he observed first the open beer can, and then the heroin, in plain view. Therefore the evidence was not obtained by means of an unreasonable search and seizure.

The trial judge ruled that the heroin must be suppressed based on the sequence of the events, rather than upon a finding that the beer, and then the heroin, were not in plain view. In this we think he erred, since no "search" occurs when an officer sees things in plain view. Whether or not the stop was "pretextual" in character, so long as it was not used as a basis for conducting a search for evidence pertaining to an offense unrelated to that for which defendant was stopped, the evidence was not unreasonably seized, as it was in plain view.

This result accords with the common sense approach invoked by plaintiff. Police officers should not be obliged to ignore traffic offenses merely because they suspect the driver of other, greater offenses; they need only be prevented from using such offenses as a pretext to search. Since the trial judge's ruling turned not on the credibility of the police witnesses, but on the sequence of the events that led to the stop, his ruling is reversed and this case remanded for further proceedings consistent with this opinion.