PEOPLE v THOMAS

Docket No. 47880. Submitted June 12, 1980, at Lansing.—Decided
    February 9, 1981. Leave to appeal denied, 411 Mich 1022.

Lamont C. Thomas was convicted of carrying a concealed weapon,
    Oakland Circuit Court, Robert L. Templin, J. He appeals,
    alleging that the inventory search of his vehicle without a
    warrant was unreasonable in scope. *Held:*

    The search without a warrant of areas within defendant's
    vehicle which were not customary places for the storage of
    valuables and which were not in plain view was unreasonable
    in scope. The search appears to have been made solely to
    discover contraband and was thus impermissible.

    Reversed.

    G. R. DENEWETH, J., dissented. He would hold that the discov-
    ery of contraband in defendant's glove compartment provided
    the exigent circumstances necessary to justify the further
    search without a warrant of the more inaccessible areas of
    defendant's vehicle. He would affirm.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — REASONABLENESS — CONSTITUTIONAL
    LAW.

    The determination whether a search and seizure is reasonable
    within the guarantees of the Fourth Amendment depends upon
    the facts and circumstances of each case.

2. SEARCHES AND SEIZURES — MOTOR VEHICLES — SEARCHES WITHOUT
    WARRANTS — INVENTORY SEARCHES.

    Police, in the interests of public safety, may impound a motor
    vehicle and may conduct an inventory search without a war-
    rant of the vehicle prior to removal for the purpose of protect-
    ing the property of the owner of the vehicle while it remains in
    police custody, to protect the police against claims or disputes

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures §§ 2, 5, 6.
[2–4] 68 Am Jur 2d, Searches and Seizures §§ 34, 57, 106.
    Lawfulness of "inventory search" of motor vehicle impounded by
    police. 48 ALR3d 537.

regarding lost or stolen property, and to protect the police from potential danger.

3. SEARCHES AND SEIZURES — MOTOR VEHICLES — INVENTORY SEARCHES — SEARCHES WITHOUT WARRANTS — REASONABLENESS.

An inventory search of an impounded motor vehicle conducted without a warrant and not involving exigent circumstances which involves examination of places within the vehicle which are not customary for the storage of valuables, are not in plain view, and which appears to be conducted solely to discover contraband is unreasonable in scope.

DISSENT BY G. R. DENEWETH, J.

4. SEARCHES AND SEIZURES — MOTOR VEHICLES — INVENTORY SEARCHES — SEARCHES WITHOUT WARRANTS — EXIGENT CIRCUMSTANCES.

*Discovery of contraband during an inventory search without a warrant of an impounded motor vehicle provides the exigent circumstances necessary to justify the continued search of more inaccessible areas of the vehicle.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Geoffrey H. Nickol,* Assistant Prosecuting Attorney, for the people.

*David J. Hoffman,* for defendant on appeal.

Before: T. M. BURNS, P.J., and BEASLEY and G. R. DENEWETH,* JJ.

PER CURIAM. Defendant, Lamont C. Thomas, was convicted in a bench trial of carrying a concealed weapon, contrary to MCL 750.227; MSA 28.424, and was sentenced to not less than three years nor more than five years in prison. He made a motion for a new trial, claiming that evidence of the gun upon which the charge was based was produced

---

* Circuit judge, sitting on the Court of Appeals by assignment.

through an illegal search and seizure. Upon denial of the motion, defendant appeals as of right.

Defendant was the front-seat passenger in an automobile that was stopped for failing to signal a left turn. Upon approaching the stopped vehicle, Sergeant Hawks and Officer Brown observed defendant bend forward so that his head was at or below the level of the dashboard. Sergeant Hawks found an open bottle of malt liquor standing upright on the floorboard between defendant's feet and placed him under arrest for possession of open intoxicants in a motor vehicle. The 14-year-old driver of the car was issued a citation for having no valid operator's license in her possession.

Defendant and the driver were taken to the patrol vehicle and, pursuant to departmental policy, a wrecker was called to tow the vehicle. No one was present at the scene who could have driven the vehicle back to defendant's house.

Prior to the arrival of the wrecker, Officer Brown searched the vehicle. This was pursuant to departmental policy that vehicles be searched prior to being towed. Officer Brown discovered two bags of marijuana in the unlocked glove compartment. Upon Brown's return to the patrol car, Sergeant Hawks asked her if she had checked underneath the dashboard. Brown replied that she had not.

Sergeant Hawks proceeded to make a second search of the vehicle. He checked under the front seat and looked up under the dashboard. He opened the two vent doors under the dash and looked inside the air vents. He also unlocked the trunk and checked inside it. Hawks discovered a loaded, .38-caliber revolver in the air vent on the passenger's side of the vehicle. Neither officer made a list of the items found in the vehicle.

Defendant claims that the inventory search of his automobile was unreasonable in scope and was merely a pretext for a prohibited search without a warrant. Therefore, he claims that the subsequent seizure of the gun was unreasonable and a violation of his Fourth Amendment rights.[1] Plaintiff argues that the seizure of defendant's automobile and the subsequent search of its interior properly falls within the inventory search exception to the warrant requirement of the Fourth Amendment.

The validity of inventory searches of impounded vehicles was upheld by the United States Supreme Court in *South Dakota v Opperman*.[2] In *Opperman,* the police found a bag of marijuana in an unlocked glove compartment during an inventory search of a car that had been impounded for multiple traffic violations. The Court held that the conduct of the police was reasonable under the Fourth Amendment, stating that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.[3]

The Court noted that in the case before them the inventory search was part of standard police procedure and that there was no suggestion that this procedure was a pretext concealing an investigatory motive. It further noted that the inventory search was not unreasonable in scope, since a car's glove compartment is a customary place for the temporary storage of valuables and since vandals would have had ready and unobstructed access to

[1] US Const, Am IV.

[2] 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976). For Michigan cases which have followed *Opperman,* see, *People v Long,* 94 Mich App 338; 288 NW2d 629 (1979), *People v Godwin,* 94 Mich App 286; 288 NW2d 354 (1979), *People v Boutell,* 80 Mich App 216; 263 NW2d 36 (1977).

[3] *Id.,* 375-376.

an unlocked glove compartment once inside the car.

In regards to the authority of police to impound vehicles, the Court stated:

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' *Cady v Dombrowski* [413 US 433, 441; 93 S Ct 2523; 37 L Ed 2d 706 (1973)], automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."[4]

The Court stated three reasons behind the practice of inventorying an impounded vehicle's contents: (1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger.[5]

In the instant case, defendant had been lawfully placed in custody after having been arrested for possession of open intoxicants in a motor vehicle.[6] Since the other occupant of the vehicle was too young to drive legally, it was proper for the police to impound the car rather than leaving it parked

---

[4] *Id.,* 368-369.

[5] *Id.*

[6] *People v Edwards,* 73 Mich App 579, 584; 252 NW2d 522 (1977).

on the road where it might obstruct traffic and jeopardize public safety. Under these circumstances, it was reasonable, pursuant to departmental policy, to conduct an inventory search of the vehicle prior to its being towed.

We find, however, that the search conducted was unreasonable in scope. Air vents, unlike glove compartments,[7] or trunks,[8] are not customary places for the storage of valuables. Nor are they areas within plain view. We believe that the facts and circumstances in this case, particularly Sergeant Hawks' second thorough search which included the air vents and the area underneath the car's dashboard, indicate that the "inventory" search here went beyond a mere search for valuables prior to the impounding of the car. Rather, it appears to have been made solely to search for contraband and, thus, since no effort was made to obtain a warrant, was an impermissible search without a warrant.[9]

Plaintiff contends that even if the inventory search of the front air vent conducted by Sergeant Hawks was unreasonable in scope, the search of the vent and the subsequent seizure of the gun was nonetheless proper. Plaintiff claims that Sergeant Hawks had probable cause to believe that a crime was being committed in his presence and, therefore, could properly search the car after Officer Brown discovered marijuana in the glove compartment during her inventory search. We do not agree.

In *Chambers v Maroney*,[10] the United States Supreme Court recognized that automobiles could

---

[7] *Godwin, supra.*

[8] *Long, supra.*

[9] *People v Roberson,* 80 Mich App 241, 243; 263 NW2d 42 (1977).

[10] 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

be searched without a warrant in circumstances
which would not justify the search without a
warrant of a house or an office. The Court said:

"Neither [*Carroll v United States,* 267 US 132; 45 S
Ct 280; 69 L Ed 543 (1925)], nor other cases in this
Court require or suggest that in every conceivable
circumstance the search of an auto even with probable
cause may be made without the extra protection for
privacy that a warrant affords. But the circumstances
that furnish probable cause to search a particular· auto
for particular articles are most often unforeseeable;
moreover, the opportunity to search is fleeting since a
car is readily movable. Where this is true, as in *Carroll*
and the case before us now, if an effective search is to
be made at any time, either the search must be made
immediately without a warrant or the car itself must be
seized and held without a warrant for whatever period
is necessary to obtain a warrant for the search.

"In enforcing the Fourth Amendment's prohibition
against unreasonable searches and seizures, the Court
has insisted upon probable cause as a minimum re-
quirement for a reasonable search permitted by the
Constitution. As a general rule, it has also required the
judgment of a magistrate on the probable-cause issue
and the issuance of a warrant before a search is made.
Only in exigent circumstances will the judgment of the
police as to probable cause serve as a sufficient authori-
zation for a search. *Carroll, supra,* holds a search
warrant unnecessary where there is probable cause to
search an automobile stopped on the highway; the car
is movable, the occupants are alerted, and the car's
contents may never be found again if a warrant must
be obtained. Hence, an immediate search is constitu-
tionally permissible."[11]

The instant case did not involve "exigent cir-
cumstances" which would justify a search without
a warrant. Here, unlike *Chambers,* the automobile
was already in the process of being lawfully taken

[11] *Id.,* 50-51.

into police custody. Since the car and its occupants were already in police custody, the police could apply for a search warrant without any reasonable possibility that the car could be taken out of the jurisdiction or that contraband could be removed before a search could be conducted. Thus, it was not necessary here to make the choice which in *Chambers* constituted the basis for upholding the validity of the search. There was no danger here that the car would flee and no longer be available after obtaining of a search warrant if it proved obtainable.

Having decided that Sergeant Hawks' second "inventory" search of the automobile was unreasonable in scope, it is unnecessary for us to address defendant's two other allegations of error. The decision of the lower court is reversed, and defendant's conviction is vacated.

Reversed.


G. R. DENEWETH, J. *(dissenting)*. I must respectfully dissent. I have no quarrel with the statement of facts in my brothers' opinion. I do not, however, believe that the search of the vehicle itself or the scope of that search was unreasonable in any way whatsoever. I would affirm.

As my brothers point out, the validity of inventory searches of vehicles has been upheld repeatedly. This includes searches of glove compartments. See *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976). The test whether the search is unreasonable depends upon the facts and circumstances of each case.

In the case at bar, the car was stopped on the highway, and, as my brothers note, was a proper subject for an impoundment and for an inventory search.

Marijuana, a perishable substance, was found in the glove compartment. The possession of marijuana being illegal, it amounted to contraband. Given the plethora of cases that have appeared before this Court, it would appear that its members ought to take judicial notice that marijuana is frequently secreted in the more inaccessible parts of motor vehicles. Surely, all law enforcement personnel are aware of this fact.

The evidence shows at least two circumstances justifying the second search. The car was on a highway, was a danger to other traffic, and was already discovered to have contained contraband in one of its compartments, *i.e.,* the glove compartment. See *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). Moreover, there was a clear possibility that the occupants of the vehicle could have had unknown confederates who would return to remove the secreted contraband. *Id.* These exigent circumstances justified Sergeant Hawks' second search.

I would affirm.