655 N.W.2d 236 (2002)
250 Mich. App. 510
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Deborah CARTER, Defendant-Appellee.
Docket No. 233493.
Court of Appeals of Michigan.
Submitted January 10, 2002, at Detroit.
Decided March 29, 2002, at 9:00 a.m.
Released for Publication July 11, 2002.
*238 Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, Michael E. Duggan, Prosecuting Attorney, Timothy A. Baughman, Chief of Research, Training, and Appeals, and Janice M. Joyce Bartee, Senior Appellate Prosecuting Attorney, for the people.
Before: COOPER, P.J., and RICHARD ALLEN GRIFFIN and SAAD, JJ.
*237 RICHARD ALLEN GRIFFIN, J.
We granted the prosecution's delayed application for leave to appeal an order of the circuit court affirming a district court order dismissing charges against defendant of burning personal property with a value greater than $1,000 but less than $20,000, M.C.L. § 750.74(1)(c)(i), false pretenses involving a value greater than $1,000 but less than $20,000, M.C.L. § 750.218(4)(a), and filing a false report of a felony to the police, M.C.L. § 750.411a(1)(b). We reverse and remand for trial.

I

STATEMENT OF FACTS
On April 9, 1999, at approximately 4:00 a.m. Lieutenant Dennis Chojnacki of the Detroit Fire Department responded to an automobile fire on a city street. When Lt. Chojnacki arrived, he saw defendant's sport utility vehicle on fire and proceeded to extinguish the fire. After examining the vehicle, Lt. Chojnacki determined that the fire had started in the engine compartment. Because Chojnacki was unable to find any accidental cause of the fire, he reported that the fire was of "suspicious" origin. At approximately 8:00 p.m. on the same date, Lt. Derek Segars, an expert arson investigator for the Detroit Fire Department, went to investigate defendant's burned vehicle, which was still parked on the street. Without a search warrant, Lt. Segars searched the vehicle and discovered evidence of arson.
On April 11, 1999, defendant reported to the police that her vehicle was missing. Defendant stated in the report that she had last seen the vehicle in her driveway at 2:30 p.m. on April 9, 1999 (approximately ten hours after the fire department had extinguished the fire). She said that she first noticed that it was missing at 1:30 a.m. on April 10, 1999. Later, defendant confirmed in a written statement that she last saw her vehicle between 2:00 and 2:30 p.m. on April 9, 1999.
At the preliminary examination, defendant argued that Lt. Segars' search of her vehicle without a warrant was unreasonable and therefore all evidence of arson must be suppressed. The district court, relying on Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), ruled that the fire department needed a warrant to search the vehicle to determine the origin of the fire. Pursuant to the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the district court disallowed Segars' testimony regarding the evidence of arson he discovered during his search of the vehicle without a warrant. Thereafter, the district court entered an order dismissing all charges against defendant on the basis of insufficient evidence. The circuit court affirmed, and we granted the prosecution's delayed application for leave to appeal.

II

THE AUTOMOBILE WARRANT EXCEPTION
In dismissing all charges against defendant, the lower courts applied the "judicially *239 created"[1] exclusionary rule to suppress evidence discovered during the search, based on probable cause, of defendant's burned automobile. The district and circuit courts relied on a decision involving the arson of a dwelling house, Tyler, supra, as authority for their rulings that evidence discovered during the search of defendant's automobile without a warrant must be suppressed. Both courts rejected application of the automobile exception to the warrant requirement on the ground that defendant's vehicle was immobile at the time of the search.

A

MOBILITY OF AUTOMOBILES
First, we disagree with the factual premise that defendant's vehicle was immobile. Although the motor of the automobile was inoperable after the fire, the vehicle was capable of mobility. During the interval between the first and second searches, defendant could have moved the automobile by summoning a tow truck. Defendant's automobile could have been hauled to any location while the police were preoccupied in court seeking a search warrant.
More fundamentally, application of the well-established automobile exception does not rise or fall depending on the peculiarities of the automobile to be searched. On the contrary, the exception was established because of the mobility of automobiles in general. Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (a ship, motorboat, wagon, or automobile is inherently different *240 from a dwelling house); Michigan v. Thomas, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (application of the exception does not depend on the likelihood in each particular case that the automobile would have been driven away). Numerous evidentiary hearings would be required in the event that application of the automobile exception were based on fact rather than law. Further, evidence seized as a result of many reasonable searches would be suppressed if it were later discovered that at the time of the search the vehicle had a dead battery, flat tire, or some other mechanical problem that hindered its self-mobility.
In United States v. Gastiaburo, 16 F.3d 582 (C.A.4, 1994), the police impounded the defendant's automobile, thus making it immobile. Nevertheless, the Fourth Circuit Court of Appeals held that the automobile exception applied:
Gastiaburo has made two responses to the government's "automobile exception" argument. First, he has contended that impoundment effectively transformed his car from a movable vehicle into a "fixed piece of property," thus making the automobile exception to the warrant requirement inapplicable. However, the justification to conduct a warrantless search under the automobile exception does not disappear merely because the car has been immobilized and impounded. See United States v. Johns, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); Florida v. Meyers, 466 U.S. 380, 382, 104 S.Ct. 1852, 1853, 80 L.Ed.2d 381 (1984) (per curiam); Michigan v. Thomas, 458 U.S. 259, 261, 102 S.Ct. 3079-81, 73 L.Ed.2d 750 (1982) (per curiam); see also [United States v. Turner, 933 F.2d 240, 244 (C.A.4, 1991); United States v. $29,000 U.S. Currency, 745 F.2d 853, 855 (C.A.4, 1984) ]. Under the Supreme Court's precedents, the fact that impoundment may have made it virtually impossible for anyone to drive the car away or to tamper with its contents is irrelevant to the constitutionality of a warrantless search under the circumstances of the present case. See, e.g., Thomas, 458 U.S. at 261, 102 S.Ct. at 3081. [Gastiaburo, supra at 586.]
The strongest authority in support of Gastiaburo is Michigan v. Thomas, supra. In lower court proceedings, our Court in People v. Thomas, 106 Mich.App. 601, 308 N.W.2d 170 (1981), ordered the suppression of evidence discovered in a vehicle on the basis that the automobile exception did not apply because the occupants of the vehicle had been arrested and the vehicle immobilized. On petition for certiorari, the United States Supreme Court reversed, holding:
We reverse. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), we held that when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody. We firmly reiterated this holding in Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). See also United States v. Ross, 456 U.S. 798, 807, n. 9, 102 S.Ct. 2157, 2163, n. 9, 72 L.Ed.2d 572 (1982). It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant. [Michigan v. Thomas, supra, 458 U.S. at 261, 102 S.Ct. 3079 (emphasis added).] *241 See also Maryland v. Dyson, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) ("the `automobile exception' has no separate exigency requirement"), and Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984).

B

REDUCED EXPECTATION OF PRIVACY FOR AUTOMOBILES
In addition, the lower courts failed to recognize or apply the second basis for the automobile exception, which is the reduced expectation of privacy regarding automobiles. In Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), the United States Supreme Court stated:
Our first cases establishing the automobile exception to the Fourth Amendment's warrant requirement were based on the automobile's "ready mobility," an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. California v. Carney, 471 U.S. 386, 390-391, 105 S.Ct. 2066, 2068-2069, 85 L.Ed.2d 406 (1985) (tracing the history of the exception); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). More recent cases provide a further justification: the individual's reduced expectation of privacy in an automobile, owing to its pervasive regulation. Carney, supra at 391-392, 105 S.Ct. at 2069-2070. [Emphasis added.]
See also People v. Kazmierczak, 461 Mich. 411, 418, 605 N.W.2d 667 (2000).
The Supreme Court explained in California v. Carney, 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), that the automobile exception arises from the decrease in the expectation of privacy associated with vehicles because of their regulation:
These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. Cady v. Dombrowski [413 U.S. 433, 440-441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ]. As we explained in South Dakota v. Opperman [428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) ], an inventory search case:
"Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order."
The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation.
In summary, because defendant's burned automobile is not a dwelling house, the warrant requirements to search a burned dwelling set forth in Tyler, supra, are not applicable. Instead, on the basis of the dual grounds of the automobile exception, we hold that suppression is not warranted by the Fourth Amendment as applied to the states by the Fourteenth Amendment because the arson investigator had probable cause to search the vehicle without a warrant.

III

MICHIGAN CONSTITUTION
Next we hold that suppression is also unjustified under the Michigan Constitution. *242 In this regard, we note that our state constitutional guarantee against unreasonable searches and seizures contains the following antiexclusionary clause:
The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state. [Const. 1963, art. 1, § 11.]
The history of this provision and its predecessor was carefully traced by Justice Brickley in People v. Nash, 418 Mich. 196, 208-215, 341 N.W.2d 439 (1983). As noted, id., the citizens of our state added an antiexclusionary provision to our constitution in 1936 in response to People v. Stein, 265 Mich. 610, 251 N.W. 788 (1933), which had excluded from evidence an illegally seized weapon. Language prohibiting the exclusion from evidence of "any narcotic drug or drugs" was added in 1952 to Const. 1908, art. 2, § 10 (now Const. 1963, art. 1, § 11). Although the delegates to the constitutional convention of 1961-62 were fully aware of Mapp, supra, the drafters of our constitution nevertheless continued with an antiexclusionary provision in the hope that the federal precedent would be overturned or limited to dwellings.
The language of the constitutional provision and its history "precludes a construction of the Michigan search and seizure clause imposing a higher standard of reasonableness for searches and seizures of items named in the proviso than the United States Supreme Court has held applicable under the Fourth Amendment." People v. Moore, 391 Mich. 426, 435, 216 N.W.2d 770 (1974). As stated by our Supreme Court in People v. Catania, 427 Mich. 447, 466, 398 N.W.2d 343 (1986): "There is no basis in this case for holding that the Michigan Constitution, art. 1, § 11, permits greater protection than the United States Constitution." See also People v. Collins, 438 Mich. 8, 25, 475 N.W.2d 684 (1991) ("art. 1, § 11 is to be construed to provide the same protection as that secured by the Fourth Amendment, absent `compelling reason' to impose a different interpretation").[2]
Because the evidence discovered in the search of defendant's automobile without a warrant is not excluded by operation of the United States Constitution, we similarly hold that exclusion is not warranted under Const. 1963, art. 1, § 11. See, generally, People v. Levine, 461 Mich. 172, 178-179, 600 N.W.2d 622 (1999).

IV

ORDER OF DISMISSAL
Finally, having concluded that the evidence of arson discovered during the search of defendant's automobile was admissible, we conclude that the lower courts erred in dismissing the charges against defendant of burning personal property valued at greater than $1,000 but less than $20,000, M.C.L. § 750.74(1)(c)(i), false pretenses involving a value greater than $1,000 but less than $20,000, M.C.L. § 750.218(4)(a), and filing a false report of a felony to the police, M.C.L. § 750.411a(1)(b). Here, there is evidence of arsondefendant's financial motive of filing an insurance claim and defendant's false statement to the police that she had last seen the vehicle at her residence approximately ten hours after the fire department *243 had extinguished the fire. The direct and circumstantial evidence constitutes sufficient probable cause to bind defendant over for trial.
If, at the conclusion of the preliminary examination, it appears to the magistrate that there is probable cause to believe that a felony has been committed and that defendant committed it, the magistrate must bind defendant over for trial. MCL 766.13; MCR 6.110(E); People v. Mason, 247 Mich.App. 64, 71, 634 N.W.2d 382 (2001). "The district court's inquiry is not limited to whether the prosecution has presented sufficient evidence on each element of of [sic] the offense, but extends to whether probable cause exists after an examination of the entire matter based on legally admissible evidence." People v. Crippen, 242 Mich.App. 278, 282, 617 N.W.2d 760 (2000). "This probable cause standard of proof is less than proof beyond a reasonable doubt." Mason, supra at 71, 634 N.W.2d 382. Probable cause exists when there is a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person to believe that the accused is guilty of the offense charged. People v. Hudson, 241 Mich.App. 268, 279, 615 N.W.2d 784 (2000). Following our review de novo of the circuit court's decision to affirm, we hold that the district court abused its discretion in dismissing the charges. Mason, supra at 70-71, 634 N.W.2d 382.
Reversed and remanded for trial. We do not retain jurisdiction.
SAAD, J., concurred.
COOPER, P.J. (dissenting).
I respectfully disagree with the majority's conclusion that the automobile exception applies to a burned automobile with an inoperable engine. Because the vehicle's engine was completely burned when the fire officials discovered it, I would conclude that the vehicle was not capable of operation for purposes of the automobile exception.
The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution protect against unreasonable searches and seizures. U.S. Const., Am. IV; Const. 1963, art. 1, § 11; People v. Kazmierczak, 461 Mich. 411, 417, 605 N.W.2d 667 (2000). "The lawfulness of a search or seizure depends on its reasonableness." People v. Snider, 239 Mich. App. 393, 406, 608 N.W.2d 502 (2000). A search conducted without a warrant is generally considered unreasonable absent both probable cause and a situation establishing an exception to the warrant requirement. Id. at 407, 608 N.W.2d 502. Evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings. People v. Eaton, 241 Mich.App. 459, 461, 617 N.W.2d 363 (2000).
The majority essentially concludes that a warrant was unnecessary to search defendant's automobile merely because it was an automobile. However, I believe that this argument is flawed given the history of the automobile exception. The automobile exception has traditionally been based on the "ready" mobility of a vehicle. California v. Carney, 471 U.S. 386, 394, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). "[T]he automobile exception is premised on an automobile's ready mobility and pervasive regulation, and if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." Kazmierczak, supra at 418, 605 N.W.2d 667 (emphasis added). The importance of an automobile's potential for mobility can be seen in the Supreme Court's conclusion that a mobile home would fall outside the automobile *244 exception if it were in a setting that objectively indicated it was being used as a residence and not for transportation. Carney, supra at 394, n. 3, 105 S.Ct. 2066. For example, Carney noted that elevating a mobile home on blocks would be relevant in determining whether it was readily mobile. Id.
The majority correctly asserts that the reduced expectation of privacy in automobiles is another basis for the automobile exception. Id. at 391, 105 S.Ct. 2066. However, this reduced expectation of privacy stems from the regulation of vehicles that are capable of traveling on the public highways. Id. at 392, 105 S.Ct. 2066. "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes temporary or otherwisethe two justifications for the vehicle exception come into play." Id. at 392-393, 105 S.Ct. 2066. In the instant case, defendant's vehicle was stationary but was clearly incapable of being driven or used on the highways.[1]
I note that the majority cites United States v. Gastiaburo, 16 F.3d 582 (C.A.4, 1994), and Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), to argue that the "actual" mobility of a particular automobile is irrelevant. However, those cases are factually inapplicable because they concern the situation where a vehicle was immobilized because of impoundment by the police or the fact that the driver was taken into custody. Indeed, in both of these cases the vehicles were either stopped or pulled over by police officers before they were searched. Thus, the vehicles were clearly capable of mobility when they were stopped. The facts in the instant case are quite different. Indeed, there can be no doubt that defendant's burned vehicle was inoperable when the fire officials initially arrived, and it remained in that condition when their second investigation was conducted well over ten hours later. In fact, at no time during the fire investigation was defendant's vehicle "readily" mobile so as to fall within the automobile exception to the warrant requirement. Defendant's vehicle could not be simply turned on with an ignition key. Moreover, extensive repairs would have been required to drive the vehicle away.[2] The fact that defendant's vehicle could have been towed to a different location does not imbue it with mobility. A mobile home on blocks, the situation referenced by the United States Supreme Court in Carney, supra, as a sign of immobility, could also be towed away.
Because I believe that the automobile exception is inapplicable, I would find that a search warrant was required on the basis of the holding in Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). In Tyler, the United States Supreme Court discussed the requirement for a warrant to search a house after a fire:
[T]here is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of *245 a firefighter rather than a policeman, or because his purpose is to ascertain the cause of a fire rather than to look for evidence of a crime, or because the fire might have been started deliberately. Searches for administrative purposes, like searches for evidence of crime, are encompassed by the Fourth Amendment. And under that Amendment, "one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is `unreasonable' unless it has been authorized by a valid search warrant." Camara [v. Municipal Court of the City & Co. of San Francisco, 387 U.S. 523, 528-529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)]. [Tyler, supra at 506, 98 S.Ct. 1942.]
The Tyler Court held that fire fighters may enter a building without a warrant to fight a fire and that they may remain in the building for a reasonable time to investigate and preserve evidence pertaining to the cause of the fire. Id. at 509-510, 98 S.Ct. 1942. However, the Supreme Court found that reentries by fire officials without a warrant after the date of the fire were "clearly detached from the initial exigency and warrantless entry" and were therefore illegal searches. Id. at 511, 98 S.Ct. 1942. The Supreme Court summarized its holding as follows:
[A]n entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. [Id. at 511-512, 98 S.Ct. 1942 (emphasis in original; citations omitted).]
In the instant case, there was a significant lapse of time between the initial examination by the fire department and the subsequent investigation by its arson expert. Under Tyler, the fire department was required to obtain a search warrant for further investigation regarding the cause of the fire. Id. Therefore, I would conclude that the district court did not err in suppressing Lt. Derek Segars' testimony. Absent this testimony, I believe that defendant's statements to the police were insufficient to establish probable cause that she committed arson. I would affirm the orders of the lower courts.
NOTES
[1] Contrary to the constitutional premise of Mapp v. Ohio, supra at 655, 81 S.Ct. 1684 ("We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."), the United States Supreme Court has now determined that the use of evidence seized in violation of the Fourth and Fourteenth Amendments does not violate the United States Constitution:

We have emphasized repeatedly that the governments' use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution. See, e.g., United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411-3412, 82 L.Ed.2d 677 (1984); Stone v. Powell, 428 U.S. 465, 482, 486, 96 S.Ct. 3037, 3046-3047, 3048-3049, 49 L.Ed.2d 1067 (1976). Rather, a Fourth Amendment violation is "`fully accomplished'" "by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can "`cure the invasion of the defendant's rights which he has already suffered.'" United States v. Leon, supra at 906, 104 S.Ct. at 3412, 82 L.Ed.2d 677 (quoting Stone v. Powell, supra at 540, 96 S.Ct. 3037; 96 S.Ct. at 3074, White, J., dissenting). The exclusionary rule is instead a judicially created means of deterring illegal searches and seizures. United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). As such, the rule does not "proscribe the introduction of illegally seized evidence in all proceedings or against all persons," Stone v. Powell, supra at 486, 96 S.Ct. at 3049, but applies only in contexts" where its remedial objectives are thought most efficaciously served," United States v. Calandra, supra at 348, 94 S.Ct. at 620; see also United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976) ("If ... the exclusionary rule does not result in appreciable deterrence, then, clearly, its use in the instant situation is unwarranted"). Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its "substantial social costs." United States v. Leon, 468 U.S. at 907, 104 S.Ct. at 3412. [Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 362-363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998).]
See also People v. Stevens (After Remand), 460 Mich. 626, 639-640, 597 N.W.2d 53 (1999), and People v. Perry, 201 Mich.App. 347, 353-359, 505 N.W.2d 909 (1993) (Griffin, P.J., concurring).
[2] Defendant has not argued a compelling reason to construe art. 1, § 11 more broadly than the Fourth Amendment. Cf. Sitz v. Dep't of State Police, 443 Mich. 744, 506 N.W.2d 209 (1993).
[1] Carney, supra at 393, 105 S.Ct. 2066 noted that a vehicle that was turned off was readily mobile by the use of an ignition key. However, an automobile with a burned-out engine, such as defendant's, could not be started without extensive repairs or a completely new engine.
[2] Indeed, if the fire department was truly worried that defendant's vehicle was capable of being removed from the scene it would not have waited over ten hours to conduct its second investigation. I would also submit that the fire department could have easily obtained a search warrant for defendant's vehicle within this period.